UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| AYANBUEZEE IGHODARO, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:20-cv-11302-IT |
| | * | |
| AUTOZONE PARTS, INC., | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM & ORDER

April 21, 2022

TALWANI, D.J.

Plaintiff Ayanbuezee Ighodaro brought this action for defamation against AutoZone Parts, Inc. ("AutoZone"), alleging that AutoZone's employee falsely accused him of shoplifting. Pending before the court is AutoZone's Motion for Summary Judgment [Doc. No. 56] on the grounds that the allegedly defamatory statements were protected by the conditional privilege that attaches to statements to the police amounting to a charge of a crime. For the following reasons, the motion is DENIED.

I.  **Factual Background**

The following facts, drawn from the summary judgment record, are uncontested. Some facts are reserved for discussion below.

Ighodaro is the owner of an auto body shop called Columbus Auto Body, Inc., located in Dorchester, Massachusetts. Compl. ¶ 2 [Doc. No. 1]. On July 4, 2018, Ighodaro and one of his customers, Ahmed Suleiman, entered an AutoZone store on Gallivan Boulevard in Dorchester. Pl's Resp. to Def's Statement of Undisputed Material Facts ("Pl's SOF Resp.") ¶ 1 [Doc. No. 60-

2]. AutoZone employees Raymond McLean and Milagro Almodovar were working in the store at that time. Id. at ¶ 2.

The store has an inventory control device, or door alarm, to detect theft. Id. at ¶ 5. Security tags, which communicate with the door alarm, are attached to store merchandise. Id. When a tagged item is purchased, an employee will deactivate the tag. Id. But if an item is removed from the store with an active tag, the door alarm sounds. Id.

Ighodaro purchased nine items from the store. Id. at ¶ 3; Pl's Ex. 3—Receipts [Doc. No. 60-6]. On his way out, the door alarm sounded. Pl's SOF Resp. ¶¶ 6, 11 [Doc. No. 60-2]. Almodovar called Ighodaro back into the store to deactivate any active tags on his merchandise. Id. at ¶ 11. Ighodaro complied and handed his bag back to Almodovar, who reprocessed the items. Id.; see also Def's Ex. 9—Security Footage [Doc. No. 56-2]. Ighodaro and Suleiman then left the store again. Pl's SOF Resp. ¶ 11 [Doc. No. 60-2]. As will be discussed further below, the parties disagree about whether the alarm sounded a second time.

Approximately forty minutes after Ighodaro and Suleiman left the store, McLean called the police. Compare id. (showing Ighodaro leaving the store at 10:05 a.m.) and Def's Ex. 4—911 Call Recording (showing timestamp of 10:45 a.m.) [Doc. No. 56-2]. He identified himself as calling from Autozone and made the following report:

> OPERATOR 064:   Okay. What's going on?
>
> THE CALLER:   [Unintelligible] two real disruptive customers a little while ago. First of all, they were stealing and they was saying profanity and telling me I'm [unintelligible] I can have my job took'n from me.
>
> Well, prior to this, I didn't know that my coworker, that's helping me out at my store today, had a run-in with them through another store as far as them saying vulgar things, and they put their hands on her. There was a legitimate -- there was a police officer that was in here right after the incident, but she's off duty and she's seen on how distraught that my coworker was. And she said that we need

2

>        to make a report just in case he came in here again because of the way he -- he handled himself. And she gave us her name and stuff as well, but I was just calling to put this complaint in.

Pl's Ex. 3—911 Call Tr. 28-29 [Doc. No. 56-2]. The operator asked twice if the person took anything and McLean replied "yes" both times. Id. at 29. McLean went on to say that Ighodaro had no license plates on his car, so McLean was unable to provide them to police, but that he knew where Ighodaro worked because Ighodaro did commercial business with AutoZone. Id. at 30. McLean then told the 911 operator that when he attempted to stop Ighodaro,

> THE CALLER:   He became irate telling me, oh, don't [unintelligible] I have a customer -- he actually demagnetized a few things off of -- off of my counter where you can demagnetize stuff. He did that as well. Like he took the product and scanned it over the demagnetizer so that it wouldn't be beep off. It still beeped off twice as he walked through my door. So I was telling him to come back, and that's when he became irate and telling me he ain't got time for none of this, and left.

Id. McLean gave the 911 operator the address of Ighodaro's auto body shop, and the operator said that police would be dispatched. Id. at 31.

After leaving the Gallivan Boulevard store, Ighodaro and Suleiman went to a different AutoZone store at Fields Corner, also in Dorchester, to get a part that was not in stock at the Gallivan Boulevard store. Pl's SOF Resp. ¶¶ 27-28 [Doc. No. 60-2]. While there, Ighodaro overheard a phone call on speakerphone in which an unknown person said that "Columbus Auto just shoplifted." Id. at ¶ 29.[1] Because the phone was on speakerphone, other customers in the store also heard the accusation. Id.

---

[1] For the purposes of summary judgment only, AutoZone does not dispute the existence of this call.

## II.     Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Baker v. St. Paul Travelers, Inc., 670 F.3d 119, 125 (1st Cir. 2012). A dispute is genuine if a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden can be satisfied in two ways: (1) by submitting affirmative evidence that negates an essential element of the non-moving party's claim or (2) by demonstrating that the non-moving party failed to establish an essential element of its claim. Id. at 331.

Once the moving party establishes the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to set forth facts demonstrating that a genuine dispute of material fact remains. Id. at 314. The non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of [the] pleadings." Anderson, 477 U.S. at 256. Rather, the non-moving party must "go beyond the pleadings and by [his or] her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). Disputes over facts "that are irrelevant or unnecessary" will not preclude summary judgment. Anderson, 477 U.S. at 248.

When reviewing a motion for summary judgment, the court must take all properly supported evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." Anderson, 477 U.S. at 255.

### III.  Discussion

Ighodaro contends that McLean's 911 call to the police and the phone call to the Fields Corner AutoZone store accusing him of theft were false statements that have caused severe damage to his reputation, business, and standing in the community. AutoZone moves for summary judgment on the ground that the statements, even if defamatory, were conditionally privileged. Ighodaro argues that a conditional privilege does not apply to the calls, and that if it does, AutoZone lost the privilege through abuse.

#### A.  *Applicability of Conditional Privilege*

Under Massachusetts law, a conditional privilege applies to statements made for the purpose of reporting a crime to the police, see Correllas v. Viveiros, 410 Mass. 314, 322, 572 N.E.2d 7 (1991), or protecting a legitimate business interest, such as store security, see Zeigler v. Rater, 939 F.3d 385, 393 (1st Cir. 2019). This privilege immunizes a defendant from liability for otherwise defamatory statements. See Hutchinson v. New England Tel. & Tel. Co., 350 Mass. 188, 191, 214 N.E.2d 57 (1966). In this case, the undisputed facts show that the call to the police and the call to the Fields Corner AutoZone were conditionally privileged. See Correllas, 410 Mass. at 322 (reporting a crime to the police); Ziegler, 939 F.3d at 393 (legitimate business interest in store security).

In his Opposition [Doc. No. 60-1], Ighodaro argues that a conditional privilege does not apply to the calls because "no crime was committed." But the conditional privilege attaches to a report of a crime to the police even if the speaker turns out to be mistaken, so long as the privilege is not abused.[2] The court therefore turns to whether AutoZone abused the privilege.

    B.    *Abuse of Conditional Privilege*

On summary judgment, once the defendant has demonstrated that a conditional privilege applies, the burden shifts to the plaintiff to prove, by clear and convincing evidence, that the privilege was lost or abused. Catrone v. Thoroughbred Racing Associations of N. Am., Inc., 929 F.2d 881, 889 (1st Cir. 1991). "A conditional privilege may be lost or abused if (1) there is 'unnecessary, unreasonable or excessive publication,' and the defendant recklessly published the defamatory statements; (2) the defendant published the defamatory statements with knowledge of their falsity or with reckless disregard of the truth; or (3) the defendant acted with actual malice." Lawless v. Estrella, 99 Mass. App. Ct. 16, 24, 160 N.E.3d 1253 (2020), review denied, 486 Mass. 1115, 165 N.E.3d 158 (2021) (quoting Barrows v. Wareham Fire Dist., 82 Mass. App. Ct. 623, 630-31, 976 N.E.2d 830 (2012)).

Under Massachusetts law, malice exists "when the 'defamatory words, although spoken on a privileged occasion, were not spoken pursuant to the right and duty which created the privilege but were spoken out of some base ulterior motive.'" Dragonas v. School Committee of Melrose, 64 Mass. App. Ct. 429, 438, 833 N.E.2d 679 (2005) (quoting Dexter's Hearthside Restaurant, Inc. v. Whitehall Co., 24 Mass. App. Ct. 217, 223, 508 N.E.2d 113 (1987)).

---

[2] Ighodaro also argues that a conditional privilege does not apply to the calls because "McLean acted out of ill will and malice" in making the calls. But this argument does not go to whether a conditional privilege applies to the calls but whether the privilege was abused.

"Although spite or ill will can support a finding of malice, it is not enough to show that the defendant merely disliked the plaintiff or that such animosity was part of the defendant's motivation." Id. at 439. Instead, the conditional privilege is lost only if it is shown that spite or ill will was the *primary* purpose of the publication. Id. Reckless disregard exists when a statement is made with "a high degree of awareness of probable falsity or serious doubt as to the truth of the statement." Judd v. McCormack, 27 Mass. App. Ct. 167, 176, 535 N.E.2d 1284 (1989) (quoting Restatement (Second) of Torts § 600 cmt. b (1977)).

Ighodaro argues that a reasonable jury could find that McLean fabricated the shoplifting charge and that AutoZone therefore lost the conditional privilege through actual malice or reckless disregard for the truth. In support, Ighodaro points to the following facts.

First, Ighodaro claims that when he and Suleiman first entered the store, McLean appeared to be angry about something that had happened prior to their arrival, and that McLean directed that anger towards them throughout their time in the store. Pl's SOF Resp. ¶ 10 [Doc. No. 60-2].

Second, McLean claims that he saw Ighodaro using, or attempting to use, the deactivation pad reserved for AutoZone employees to deactivate the security tag on an item before putting an item in his pocket. Id. at ¶¶ 7-9. But Ighodaro disputes McLean's assertion, pointing to inconsistencies revealed in discovery. In his deposition, McLean claimed that he saw Ighodaro demagnetize an item and that Ighodaro told McLean to mind his own business. McLean Depo. 63 [Doc. No. 60-13]. In its interrogatory responses, however, AutoZone stated that no AutoZone employee witnessed the demagnetization firsthand and that the claim was determined afterwards, when AutoZone employees viewed the store security camera footage. AutoZone Interrog. Resp. ¶ 8 [Doc. No. 60-7]. Moreover, the AutoZone store manager stated during his deposition that the

store employees were not authorized to view the surveillance footage. Persichini Depo. 43 [Doc. No. 60-14]. Ighodaro argues that these facts call into question the truth of McLean's claim that he saw Ighodaro attempting to use the deactivation pad.

Third, Ighodaro points to Almodovar's shifting deposition testimony regarding what items he paid for. Almodovar initially stated that she saw Ighodaro near the cellphone merchandise display with security-tagged merchandise in his hands, that Ighodaro had paid for all the items he put on the counter, but that none of those items had come from the cell phone display. Almodovar Depo. 39-40, 77 [Doc. No. 60-13]. When presented with Ighodaro's receipts, however, she conceded that some of the items would have come from the cell phone display. Id. at 88.

Fourth, Ighodaro states that AutoZone's claim that the door alarm sounded a second time but Ighodaro refused to come back in is false. Pl's SOF Resp. ¶¶ 11, 13 [Doc. No. 60-2]. According to Ighodaro, he and Suleiman exited the store without incident. Id. at ¶ 11. The security footage shows that as Ighodaro left the store the second time, he paused at the door and had a conversation with Almodovar. Id. The video, however, has no sound and does not help resolve the dispute.

Fifth, Ighodaro points to Almodovar's inconsistent testimony that, after the second time the alarm sounded, Ighodaro went to his car, dropped off the bag with his purchases, and then returned to the store, at which point the alarm did not go off. Almodovar Depo. 41-42, 44-45 [Doc. No. 60-13]. This, she testified, caused her to believe that he had left the stolen item in the car. Id. at 44. When shown the surveillance video, in which Ighodaro does not return to the store after going to his car, Almodovar said that she no longer remembered what had happened and accused counsel of causing her anxiety. Id. at 61-68.

All of these facts and factual disputes, Ighodaro argues, would permit a reasonable jury to find that AutoZone abused the conditional privilege. The court agrees. Whether AutoZone abused the conditional privilege turns on whether McLean made a truthful report to the police or fabricated the shoplifting accusation. And that requires a factfinder to determine whether McLean and Almodovar or Ighodaro and Suleiman are more credible. The court cannot make such an assessment on summary judgment.

### IV.     Conclusion

For the foregoing reasons, AutoZone's Motion for Summary Judgment [Doc. No. 56] is DENIED

IT IS SO ORDERED.

April 21, 2022                                         /s/ Indira Talwani
                                                      United States District Judge